**IN THE UNITED STATES DISTRICT COURT FOR
THE DISTRICT OF MASSACHUSETTS**

| | |
|---|---|
| DOE, JOHN,<br><br>      Plaintiff,<br>  v.<br><br>BOSTON UNIVERSITY and<br>TRUSTEES OF BOSTON UNIVERSITY<br><br>      Defendants. | **CIVIL ACTION NO:**<br>**1:24-cv-10619-FDS** |

**DEFENDANT TRUSTEES OF BOSTON UNIVERSITY'S OPPOSITION TO
PLAINTIFF'S *EX PARTE* MOTION TO PROCEED UNDER A PSEUDONYM
AND FOR A PROTECTIVE ORDER**

Defendant Trustees of Boston University ("BU" or the "University") files this

opposition to Plaintiff's *Ex Parte* Motion to Proceed under a Pseudonym and for a Protective

Order (the "Motion").[1]

**INTRODUCTION**

This case is a garden variety employment dispute. Plaintiff alleges that BU

discriminated against him based on sex, age, and race/color/national origin when it found that

he had engaged in workplace sexual harassment and terminated his employment. Plaintiff also

claims that BU breached the terms of an employment contract with him.[2]

Employment disputes are a staple of federal court litigation, and plaintiffs in employment

cases regularly proceed under their own names. The fact pattern presented here – an employee

claiming they were discriminatorily terminated as the result of a biased investigation into their

alleged misconduct – is typical. See, e.g., Ronda-Perez v. Banco Bilbao Vizcaya Argentaria-

---

[1] Defendant Boston University has been voluntarily dismissed from the case.
[2] BU denies all of Plaintiff's claims.

P.R., 404 F.3d 42, 43-44 (1st Cir. 2006) (bank manager terminated for violating harassment and confidentiality policies claimed that investigation was discriminatory based on age); Bennett v. Saint-Gobain Corp., 507 F.3d 23, 27 (1st Cir. 2007) (in-house attorney terminated for sexual harassment claimed that investigation was discriminatory based on age and retaliation).[3] There is nothing extraordinary about this case that warrants deviating from the "strong presumption against the use of pseudonyms in civil litigation." Doe v. Mass. Inst. of Tech., 46 F.4th 61, 69 (1st Cir. 2022) ("Doe v. MIT").

The fact that Plaintiff happened to work for a university, rather than a private company, the government, or any other type of non-profit, should not change the analysis here. Plaintiff attempts to shoehorn his request for anonymity into a line of cases allowing university *students* disciplined for sexual misconduct to proceed under pseudonyms. However, the case for pseudonymity is much stronger for students than employees, and allowing Plaintiff to proceed under a pseudonym would treat him more favorably than other litigants that appear before the federal courts in employment disputes.

Additionally, pseudonymity is not warranted here because Plaintiff has, in effect, already revealed his identity in his Complaint. Although the Complaint does not use Plaintiff's name, it includes very specific details about his life, including his detailed education history, his narrow area of research, his employment history, and his specific faculty appointments at BU. Having already revealed so many identifying details about himself, Plaintiff cannot credibly claim that he would suffer severe harm by proceeding under his name in this case.

As set forth below, none of the four paradigms for pseudonymity outlined by the First

---

[3] See also Pepin v. Gen. Dynamics-OTS, Inc., No. 2:15-CV-00231-JDL, 2016 WL 6902117, at *2 (D. Me. Nov. 23, 2016), report and recommendation adopted, No. 2:15-CV-00231JDL, 2016 WL 7262896 (D. Me. Dec. 15, 2016) (employee claimed that his termination for sexual harassment was discriminatory).

Circuit in <u>Doe v. MIT</u>, 46 F.4th 61 (2022) warrant allowing Doe to proceed anonymously here and treating him differently than nearly every other plaintiff in an employment dispute before the federal courts.

### **SUMMARY OF PLAINTIFF'S CLAIMS**

Plaintiff was a Professor at the BU Chobanian & Avedisian School of Medicine. He was terminated in April 2023, after a BU hearing board found that he had sexually harassed a female employee in his lab (Jane Roe).[4] <u>See</u> Complaint (docket #1) at ¶¶ 450. Specifically, the hearing board found that Plaintiff had kissed Roe on the cheek daily and requested that Roe kiss him on the cheek daily; that Plaintiff had hugged Roe regularly; that Plaintiff had touched her back one to three times per month; that Plaintiff occasionally held his hands out and expected that Roe would hold his hands; that Plaintiff had taken Roe's measurements for an outfit he planned to purchase for her, insisted that she try on the outfit, asked her to pull up her top so he could see how the pants fit (despite Roe's objection that the pants were see-through), and checked the fit of the waistband with his hand; that Plaintiff asked about her about medical issues related to her reproductive organs and asked whether Roe was "being a good girl"; and that Plaintiff repeatedly telephoned Roe at night.[5]

In this case, Plaintiff alleges that his termination from BU and the finding that he was responsible for sexual harassment were discriminatory based on sex, age, and race/color/national origin. See Complaint, Counts I-VII (asserting claims for employment discrimination under Title IX, M.G.L. c. 151B, Title VII, and the Age Discrimination in Employment Act). Plaintiff also alleges claims for breach of an employment contract (Count VIII), denial of basic fairness

---

[4] Jane Roe was employed by Boston Medical Center, a BU-affiliated hospital.

[5] Nowhere in his 90-page, 487-paragraph Complaint or in his counsel's Declaration in support of the Motion (docket #6-2) does Plaintiff set forth the nature of the sexual harassment he was found to have engaged in. This summary is taken from the written decision of the hearing board referenced in Complaint paragraph 215.

(Count IX), estoppel (Count X), and breach of the implied covenant of good faith and fair dealing (Count XI).

Although Plaintiff does not use his name in the Complaint, he includes many specific details about himself that make him easily identifiable, including the following:

- His specific field of study - diabetic retinopathy (Complaint, ¶ 96);

- The universities from which he received his undergraduate, master's, and doctoral degrees and his years of graduation (Complaint, ¶¶ 99-101);

- His specific employment history before joining BU (Complaint, ¶¶102-103);

- His specific appointments as a BU faculty member throughout his career in the Departments of Medicine (Section of Endocrinology, Diabetes, and Nutrition) and Ophthalmology (Complaint, ¶¶104-108);

- The institutions from which he received research grants and awards and his publication history (Complaint, ¶¶97-98).

## **LEGAL STANDARD**

The First Circuit's decision in Doe v. MIT, 46 F.4th 61, sets forth the standard for assessing a party's request to proceed under a pseudonym. There is a "strong presumption against the use of pseudonyms in civil litigation[,]" and the use of pseudonyms is warranted only in exceptional cases. Id. at 67, 69-70. The presumption against pseudonyms stems from "our Nation's tradition of doing justice out in the open, neither in a corner nor in any covert manner." Id. at 68 (internal quotation omitted). The use of pseudonyms is in tension with the right of public access to judicial proceedings and documents under the First Amendment and common law. Id. at 67.

The First Circuit has articulated the danger of allowing the broad use of pseudonyms in

civil litigation:

> Lawsuits in federal courts frequently invade customary notions of privacy and – in the bargain – threaten parties' reputations. The allegations are often serious (at least to the parties) and motivated adversaries do not lack for procedural weapons. Facing the court of public opinion under these conditions is sometimes stressful – but that is the nature of adversarial litigation. If commonplace lawsuit-induced distress were enough to justify the use of a pseudonym, anonymity would be the order of the day: Does and Roes would predominate.

Id. at 70.

The party seeking pseudonymity bears the burden of rebutting the strong presumption against it. Id. at 73. The First Circuit has cautioned that "[i]n most cases, the district court should require a declaration or affidavit either by the moving party or by someone with special knowledge who can speak to the need for anonymity in [the] case." Id.

The First Circuit has identified four general categories of exceptional cases in which the use of a pseudonym will ordinarily be warranted:

1.  cases involving "[a] would-be Doe who reasonably fears that coming out of the shadows will cause him unusually severe harm (either physical or psychological)";

2.  "case in which identifying the would-be Doe would harm innocent non-parties";

3.  "cases in which anonymity is necessary to forestall a chilling effect on future litigants who may be similarly situated"; and

4.  Cases "that are bound up with a prior proceeding made confidential by law."

Id. at 71-72 (internal quotations omitted).

### ARGUMENT

This is not an exceptional case in which the use of a pseudonym is warranted. Rather, this is a garden-variety employment dispute. Plaintiffs in employment discrimination cases routinely proceed under their own names, and there is no reason to treat this case differently. None of the

four <u>Doe v. MIT</u> paradigms warranting pseudonymity applies here.

Further, Plaintiff's Motion is entirely unsupported by any competent evidence. He has not submitted an affidavit from himself or any other person with special knowledge of the need for anonymity in the case. <u>See</u> <u>Doe v. MIT</u>, 46 F.4th at 73 ("[i]n most cases, the district court should require a declaration or affidavit either by the moving party or by someone with special knowledge who can speak to the need for anonymity in [the] case."). Here, Plaintiff has merely submitted a Declaration from his counsel (docket # 6-2) that contains nothing more than advocacy and conclusory statements not based on personal knowledge. Plaintiff falls far short of meeting his burden to rebut the presumption against the use of pseudonyms in civil litigation.

### I. PROCEEDING UNDER HIS OWN NAME WILL NOT CAUSE PLAINTIFF UNUSUALLY SEVERE PHYSICAL OR PSYCHOLOGICAL HARM.

Plaintiff fails to articulate *any* potential physical or psychological harm he will suffer from using his own name, let alone any "unusually severe" harm of this nature. Plaintiff has not submitted any affidavit attesting to the harm he fears from attaching his name to this lawsuit in the normal course. The only evidence Plaintiff has submitted—his counsel's secondhand Declaration—also makes no mention of physical or psychological harm. Rather, Plaintiff's Memorandum of Law merely states, in conclusory fashion, that Plaintiff will suffer reputational harm if forced to proceed under his own name.

As a result, this case falls squarely outside the First Circuit's first paradigm. <u>See</u> <u>Doe v. MIT</u>, 46 F.4th at 71 (explicitly requiring that plaintiff reasonably fear unusually severe harm that is "physical or psychological" and giving examples of such harm, including "severe harm at the hands of other inmates[,]" "deportation, arrest, and imprisonment[,]" and a threat to "plaintiff's recovery from longstanding eating disorder"); <u>Doe v. Mass. Inst. of Tech.</u>, No. 21-12060-RGS, 2022 WL 16554725, at *1 (D.Mass. Oct. 31, 2022) ("<u>Doe v. MIT</u> District Court Decision on

6

Remand") (after remand from the First Circuit, holding that the plaintiff – a student accused by his ex-girlfriend of nonconsensual sexual contact, forced sexual intercourse, and sexual harassment – did not demonstrate a reasonable fear of unusually severe physical or psychological harm). Contrast Doe v. Del Toro, No. 1:23-cv-13112-JEK, 2024 WL 816511, at *2 (D.Mass. Feb. 27, 2024) (plaintiff who "credibly alleged that disclosure of his name would inhibit his ongoing recovery [from significant mental health challenges] and trigger serious risks, including suicidal ideation" allowed to proceed under a pseudonym).

The reputational harm Plaintiff fears here is entirely typical in employment discrimination litigation, in which parties routinely proceed under their own names. See, e.g., Ronda-Perez, 404 F.3d at 43-44 (bank manager terminated for violating harassment and confidentiality policies claimed that investigation was discriminatory based on age); Bennett, 507 F.3d at 27 (in-house attorney terminated for sexual harassment claimed that investigation was discriminatory based on age and retaliatory); Pepin, 2016 WL 6902117, at *2 (employee claimed his termination for sexual harassment was discriminatory). See also Doe v. Coll. of N. J., 997 F.3d 489, 495-497 (3d Cir. 2021) (affirming District Court's denial of faculty member's request to proceed under a pseudonym in case alleging discrimination based on gender, national origin, and pregnancy and retaliation).

Litigants are not able to shroud their cases in secrecy merely because they challenge their former employer's findings that they have engaged in sexual harassment or other misconduct. See, e.g., Doe v. Garland, No. 1:21-mc-00044, 2021 WL 3622425, at *2-3 (D.D.C. April 28, 2021) (denying Assistant United States Attorney's request to proceed under a pseudonym in an employment discrimination case challenging disciplinary action taken against her and stating, "[e]mployment discrimination claims that closely resemble those of plaintiff are . . . frequently

litigated in federal court using plaintiffs' full names and there is nothing inherently 'sensitive' or 'highly personal' about the fact that one was [sic] been disciplined or alleged employment discrimination."); Doe v. Regents of Univ. of Colo., 603 F.Supp.3d 1014, 1020 (D. Colo. 2022) (denying medical faculty member's request to proceed under a pseudonym in an employment discrimination case challenging university's findings that she had engaged in medical misconduct). The Court in Regents of University of Colorado stated:

> On the whole, this case strikes the Court as an employment dispute like so many others that the Court confronts on a regular basis. Such lawsuits frequently contain allegations of discrimination, harassment, and retaliation and are hotly disputed by the two sides. It is undeniably true that when a plaintiff is identified as a complaining party in an employment-related or whistleblower lawsuit, it might cause future employers to think twice about hiring her. But such is the case for any plaintiff in an employment-related or discrimination-related case. If Plaintiff ultimately is vindicated, which is the objective of the lawsuit, then she will have the outcome to show future employers. And, while the case is pending, she will be able to tell other potential employers she is challenging the termination from [the university]. But it is highly unusual (indeed, in this judge's experience, unknown) for this kind of lawsuit to be filed under seal or for the identities of the parties to be kept secret.

603 F.Supp.3d at 1020.

The cases cited by Plaintiff are distinguishable. They were not decided under the Doe v. MIT standard, and they involve students (rather than employees) and different underlying conduct than that alleged here. Contrast Doe v. Purdue Univ., 321 F.R.D. 339, 342 (N.D. Ind. 2017) (plaintiff was a student who had been found responsible for sexual assault and the facts involved a history of intercourse and other intimate information); Doe v. Colgate Univ., No. 5:15-cv-1069, 2016 WL 1448829, at *1 (N.D.N.Y. Apr. 12, 2016) (plaintiff was a student found responsible for sexually assaulting three other students); Doe v. Trs. of Dartmouth Coll., No. 18–cv–040–LM, 2018 WL 2048385, at *1 (D.N.H. May 2, 2018) (plaintiff was a student found responsible for physically assaulting another student during a sexual encounter). Plaintiff does not cite a single case in which a faculty member bringing a Title IX erroneous outcome claim

was permitted to proceed under a pseudonym. As set forth below (pages 10-11), faculty members asserting Title IX claims typically file under their own names. The University has located only one case in which a professor filed a motion to proceed under a pseudonym in a Title IX erroneous outcome case, and the motion was denied. See Doe v. George Mason Univ., No. 1:19-cv-01249-LO-MSN, April 23, 2020 Memorandum Opinion & Order (E.D. Va.) (attached hereto as Exhibit A).

Lastly, Plaintiff cannot credibly claim that he would suffer unusually severe physical or psychological harm from proceeding under his own name because he has, in effect, already revealed his identity in his Complaint. Although the Complaint does not use Plaintiff's name, it includes very specific details about his life, including his detailed education history, his narrow area of research focus, his employment history before BU, and his specific faculty appointments at BU. Plaintiff's identity can easily be determined from the information already in the Complaint.

## II.    IDENTIFYING PLAINTIFF WILL NOT HARM INNOCENT NON-PARTIES.

In his Memorandum, Plaintiff makes the conclusory statement that Roe will be harmed if he is identified, without any explanation or argument. However, revealing Plaintiff's name will not harm Jane Roe, the employee who complained that Plaintiff had sexually harassed her, or any other innocent third parties.

If Plaintiff is required to proceed under his own name, Roe can (and should) still be identified by a pseudonym, consistent with the First Circuit's direction that non-parties have a stronger case for anonymity than parties. See Doe v. MIT, 46 F.4th at 71. According to Plaintiff's Complaint (¶ 109), he supervised approximately 100 employees in his lab over the years, of which Roe is one. Roe's co-workers in the lab are, for the most part, already aware of

her harassment complaint from their participation in the ensuing investigation, and others would be unlikely to identify Roe if her name is not used in this case. Contrast Doe v. Mass. Inst. of Tech., 2022 WL 16554725, at *1 (explaining that the MIT case followed "a Title IX proceeding involving accusations made against [the plaintiff] by his ex-girlfriend, Jane Doe, of nonconsensual contact and forced sexual intercourse, and sexual harassment"). Further, as set forth above, Plaintiff's Complaint already contains detailed allegations about who he is and the research performed in his lab. Revealing his name will not change an outsider's ability to identify Roe. Additionally, unlike in Doe v. MIT, 46 F.4th at 64, and the other cases cited by Plaintiff, the party who complained of sexual harassment here was not a student.

### III.   IDENTIFYING PLAINTIFF WILL NOT HAVE A CHILLING EFFECT ON SIMILARLY-SITUATED FUTURE LITIGANTS.

Plaintiff cannot meet the third paradigm identified by the First Circuit because identifying Plaintiff will not have a chilling effect on similarly-situated future litigants. Plaintiff is not similarly situated to college students who are disciplined for sexual misconduct toward other students. Rather, Plaintiff is akin to employees who claim that they were discriminatorily terminated based on biased investigations into alleged misconduct.

As set forth above, employment discrimination cases and other employment disputes are routinely filed in federal court even though plaintiffs must proceed under their own names. See pages 7-8, above. Employees regularly file suit under their own names claiming that they were wrongfully held responsible for sexual or other misconduct in a biased proceeding. See, e.g., Ronda-Perez, 404 F.3d at 43-44 ; Bennett, 507 F.3d at 27; Pepin, 2016 WL 6902117, at *2. This includes university faculty and staff who claim they were wrongfully disciplined for sexual misconduct and bring Title IX erroneous outcome claims. See Farzinpour v. Berklee Coll. of Music, Docket 1:20-CV-11003 (D.Mass.) (faculty member terminated for sexual misconduct did

not file motion to proceed under pseudonym); Crowther v. Bd. of Regents of Univ Sys. of Ga., Docket 1:21-cv-04000-VMC (N.D. Ga. 2023) (same); Verdu v. Trs. of Princeton Univ., Docket 3:19-CV-12484 (D.N.J.) (same); Abraham v. Thomas Jefferson Univ., Docket 2:20-CV-02967 (E.D. Pa.) (physician who worked at university hospital asserting Title IX erroneous outcome claim did not move to proceed under pseudonym). In these cases, all of which were brought by the same law firm representing Plaintiff, the faculty/staff asserting Title IX erroneous outcome claims did not seek to procced under pseudonyms. Indeed, in his Memorandum, Plaintiff does not cite any other cases in which a faculty member bringing a Title IX erroneous outcome claim was permitted to proceed under a pseudonym. Contrast Doe v. George Mason Univ., No. 1:19-cv-01249-LO-MSN, April 23, 2020 Memorandum Opinion & Order (E.D. Va.) (attached hereto as Exhibit A) (faculty member's motion to proceed under a pseudonym was denied).

> As Judge Gorton noted in the Doe v. MIT District Court Decision on Remand:
>
> the third-prong exception threatens to swallow the rule contrary to the First Circuit's principle that "[l]itigation by pseudonym should occur only in 'exceptional cases.' " [*Doe v. MIT*, 46 F.4th] at 70. As the First Circuit recognized, the nature of adversarial litigation "frequently invade[s] customary notions of privacy and – in the bargain – threatens parties' reputations." *Id.* Because parties seek anonymity precisely to avoid such harm, the third paradigm as written could apply to virtually any case in which parties wish to use a pseudonym. The harm Doe identifies here — "reputational damages and consequences that flow therein as a result of the false allegations," Pl.'s Mem. of Law at 11 — would also apply in a host of other areas, such as defamation, medical torts, and employment discrimination, where the record may reveal unflattering, embarrassing, or intimate facets of a party's past. *Cf. Doe v. MIT*, 46 F.4th at 70; *see also id.* at 69-70 (cautioning against a litigation world in which "Does and Roes would predominate," and warning that "[a] judicial system replete with Does and Roes invites cynicism and undermines public confidence in the courts' work.").

See 2022 WL 16554725, at *2, n.1 (finding that the first, third, and fourth paradigms did not apply in the Doe v. MIT case). As in the Doe v. MIT case, the third paradigm does not apply here.

IV.    THE FACT THAT THIS CASE INVOLVES AN INTERNAL TITLE IX PROCESS DOES NOT JUSTIFY THE USE OF A PSEUDONYM HERE.

Plaintiff should not be allowed to proceed under a pseudonym simply because this case involves an underlying Title IX proceeding. As the First Circuit recognized in Doe v. MIT, 46 F.4th at 74, "the confidentiality of a Title IX disciplinary proceeding may sometimes – *but not always* – furnish grounds for finding an exceptional case warranting pseudonymity" (emphasis added). See also Doe v. Trs. of Ind. Univ., 101 F.4th 485, 492-93 (7th Cir. 2024) (holding that specific decisions allowing students to proceed under a pseudonym in Title IX cases "do not create a Title IX easement across the norm of using litigants' names" and that "[t]he statute itself does not provide for anonymous suits"); Doe v. MIT Decision on Remand, 2022 WL 16554725, at *1, n.1 (finding that the fourth paradigm did not apply); Doe v. Rosalind Franklin Univ., 685 F.Supp.3d 684, 686-88 (N.D. Ill. 2023) (denying student's motion to proceed under a pseudonym in student's lawsuit against university and others arising from Title IX proceeding); Doe v. George Mason Univ., No. 1:19-cv-01249-LO-MSN, April 23, 2020 Memorandum Opinion & Order (E.D. Va.) (denying faculty member's motion to proceed under a pseudonym in Title IX erroneous outcome case against university) (attached as Exhibit A hereto).

Here, the fact that Plaintiff was an employee, not a student, weighs against allowing him to proceed anonymously. In Doe v. MIT, 46 F.4th at 74, the First Circuit discussed Title IX privacy considerations in the context of a student disciplinary matter. The Court emphasized the privacy protections afforded to students under the Family Educational Rights and Privacy Act of 1974 ("FERPA"), 20 U.S.C. §1232g, which do not apply to employees. Id.  The privacy rights of students and employees are not comparable, and the First Circuit's framework for student cases does not translate to employment litigation.

The Title IX regulatory scheme, intended to promote educational equity and opportunity,

12

applies to students across the board. Employees, on the other hand, only receive the special protections of the Title IX regulations if they happen to work for a university, rather than a private company or other employer. Here, where the underlying sexual misconduct complaint was a workplace matter between employees, the public's interest in transparency outweighs the values underpinning the confidentiality protections in the Title IX regulations.[6]

As set forth above (pages 7-8), employees generally cannot proceed pseudonymously, even when their own sexual or other misconduct is at issue in a lawsuit. Allowing Plaintiff to proceed under a pseudonym here would treat him more favorably than nearly every other employment discrimination litigant in the federal courts simply because his employer happened to be a university.

### V.       THERE IS NO OTHER REASON TO ALLOW PLAINTIFF TO PROCEED UNDER A PSEUDONYM.

This case does not fit into any of the four paradigms set forth by the First Circuit in Doe v. MIT, 46 F.4th at 71-72, and there is no other reason to allow Plaintiff to proceed under a pseudonym. Plaintiff argues that allowing pseudonymity will not prejudice BU. This is not correct. BU will be constrained in its ability to seek discovery and gather factual information if it cannot use Plaintiff's name. Further, a lack of prejudice to the defendants is not a reason to dispense with the public's strong interest in transparency in civil litigation.

Moreover, Plaintiff's argument that the public interest in learning his identity is weak fails to address the serious risk that pseudonymous lawsuits erode public access to and public trust in judicial proceedings. As the First Circuit stated in Doe v. MIT, allowing the use of pseudonyms can erode the public's sense of fairness in judicial proceedings and prevents the citizenry from monitoring the functioning of the courts. 46 F.4th at 68-69. Plaintiff has not met

---

[6] See 34 C.F.R. §106.71(a).

his burden to rebut the strong presumption against the use of pseudonyms in civil litigation.

## CONCLUSION

For the reasons set forth above, BU respectfully requests that the Court deny Plaintiff's *Ex Parte* Motion to Proceed under a Pseudonym and for a Protective Order.

## REQUEST FOR ORAL ARGUMENT

Pursuant to Local Rule 7.1(d), BU respectfully requests oral argument on Plaintiff's *Ex Parte* Motion to Proceed under a Pseudonym and for a Protective Order. BU submits hat oral argument will assist the Court in considering the Motion.

TRUSTEES OF BOSTON UNIVERSITY,
By its attorney,

/s/ Jennifer Belli
Jennifer Belli (BBO #660278)
jbelli@bu.edu
Boston University
Office of the General Counsel 125
Bay State Road Boston,
MA 02215
(617) 353-2326

Dated: June 12, 2024

14

## CERTIFICATE OF SERVICE

I, Jennifer Belli, hereby certify that this document, filed through the CM/ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF) and paper copies will be sent to those indicated as nonregistered participants on June 12, 2024.

/s/ Jennifer Belli