**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS**

DOE, JOHN,

        Plaintiff,

  v.


BOSTON UNIVERSITY and
TRUSTEES OF BOSTON UNIVERSITY

        Defendants.

**CIVIL ACTION NO:
1:24-cv-10619-FDS**

## AMENDED ANSWER TO COMPLAINT

Pursuant to Fed. R. Civ. P. 15(a)(1)(A), Defendant Trustees of Boston University (the

"University" or "BU") files this Amended Answer. The University answers the

correspondingly numbered paragraphs of the Complaint of Plaintiff John Doe ("Plaintiff" or

"Doe") as follows.[1] All allegations not specifically admitted herein are denied.[2]

Defendant Boston University has been voluntarily dismissed from the case.

1.      The University admits that this case arises in part out of actions the University

(and its employees and agents) took as a result of sexual misconduct allegations made against

Plaintiff. Otherwise denied.

2.      The University admits that Plaintiff held faculty positions in the Boston

University Chobanian & Avedisian School of Medicine for over 23 years. Otherwise denied.

3.      The University admits that, in October 2021, it received an anonymous complaint

---

[1] The University notes that Plaintiff's 90-page, 487-paragraph Complaint does not comply with Fed. R. Civ. P. 8(a)(2)'s requirement of a "short and plain statement of the claim showing that the pleader is entitled to relief." Nonetheless, the University has made a good faith effort to respond to the non-compliant Complaint.
[2] The University has not reproduced the headings and subheadings in the Complaint here. To the extent any of the headings set forth in the Complaint assert factual allegations, the University denies those allegations.

1

alleging that Plaintiff had engaged in sexual harassment. Otherwise denied.

4.    Denied.

5.    Denied.

6.    Denied.

7.    The University admits that it placed Plaintiff on paid administrative leave in January 2022. Otherwise denied.

8.    Denied.

9.    Denied.

10.    Denied.

11.    Denied.

12.    Denied.

13.    Denied.

14.    Denied.

15.    Denied.

16.    Denied.

17.    Denied.

18.    Denied.

19.    The University admits that the Hearing Board evaluated Plaintiff's alleged conduct under two applicable policies. Otherwise denied.

20.    The University admits that the Hearing Board found Plaintiff responsible for engaging in sexual harassment in violation of the Sexual Misconduct/Title IX Policy applicable to conduct that occurred before August 14, 2020. The University further admits that the Hearing Board did not find Plaintiff responsible for engaging in Title IX Sexual Harassment, as defined

in the Sexual Misconduct Policy applicable to conduct that occurred on or after August 14, 2020. Otherwise denied.

21.     The University admits that the sanction report recommended that Plaintiff's employment be terminated for cause. Otherwise denied.

22.     The University admits that the University provided Plaintiff with a notice of non-continuation of his rolling faculty appointment in addition to commencing termination for cause proceedings. Otherwise denied.

23.     Denied.

24.     The University admits that it terminated Plaintiff's faculty appointment for cause effective April 30, 2023. Otherwise denied.

25.     Denied.

26.     This paragraph states legal conclusions to which no response is required. To the extent a response is deemed required, the University denies the allegations in this paragraph.

27.     Denied.

28.     Denied.

29.     The University lacks knowledge or information sufficient to form a belief about whether Plaintiff was ready to retire at age 63. Otherwise denied.

30.     Denied.

31.     The University admits that this paragraph summarizes the causes of action Doe purports to assert in the Complaint. Otherwise denied.

32.     The University admits that Doe was employed by the University until April 30, 2023. The University lacks information knowledge or information sufficient to form a belief as to Doe's residency.

33.     The University admits that Doe was 63 years old in April 2023, when his employment was terminated. The University lacks knowledge or information sufficient to form a belief as to the truth of the allegation that Doe is of East Indian (South Asian) descent or the characterization that Doe's complexion is "medium." Otherwise denied.

34.     The University's proper corporate name is "Trustees of Boston University." The University admits that is a private university located in the Commonwealth of Massachusetts, with its principal place of business at One Silber Way, Boston, Massachusetts, 02215. Otherwise denied.

35.     Denied. The University denies that its governing body is a separate entity from the University.

36.     The University does not contest that this Court has subject matter jurisdiction.

37.     The University does not contest that this Court has personal jurisdiction over the University.

38.     The University lacks knowledge or information sufficient to form a belief as to the truth of the allegations in this paragraph.

39.     The University does not contest that this Court is an appropriate venue.

40.     The University lacks knowledge or information sufficient to form a belief as to the truth of this allegation.

41.     The University lacks knowledge or information sufficient to form a belief as to the truth of this allegation.

42.     The University lacks knowledge or information sufficient to form a belief as to the truth of this allegation.

43.     The University lacks knowledge or information sufficient to form a belief as to

the truth of this allegation.

44.    The University lacks knowledge or information sufficient to form a belief as to the truth of this allegation.

45.    Denied.

46.    The University admits that, in 2012, then-University President Robert Brown appointed a task force to examine the culture of the BU men's ice hockey team after sexual assault charges were brought against two BU hockey players. Otherwise denied.

47.    Admitted.

48.    The University lacks knowledge or information sufficient to form a belief about the truth of the allegations in this paragraph.

49.    The University admits that in approximately 2012, student activists demanded more comprehensive services for the prevention of and response to sexual violence on campus. The University further admits that in May 2012, then-University President Robert Brown announced the establishment of a center dedicated to preventing and responding to sexual assault on campus. Otherwise denied.

50.    Denied.

51.    Admitted.

52.    Admitted.

53.    Admitted.

54.    The University lacks knowledge or information sufficient to form a belief as to the truth of the allegations in this paragraph.

55.    The University lacks knowledge or information sufficient to form a belief as to the truth of the allegations in this paragraph.

56.     The University admits only that in or about February 2021, students emailed University administrators a link to a document with anonymous allegations of sexual assault and harassment, including allegations regarding BU faculty. The University lacks knowledge or information sufficient to form a belief as to the truth of the remaining allegations in this paragraph.

57.     The University lacks knowledge or information sufficient to form a belief as to the truth of the allegations in this paragraph.

58.     Admitted.

59.     Admitted.

60.     The University admits the allegations in the first sentence of this paragraph. Otherwise denied.

61.     Denied.

62.     Denied.

63.     The University admits that *The Daily Free Press* published the article referenced in this paragraph. Otherwise denied.

64.     The University admits that *The Daily Free Press* published the article referenced in this paragraph. Otherwise denied.

65.     The University lacks knowledge or information sufficient to form a belief as to the truth of the allegations in this paragraph.

66.     Denied.

67.     The University admits that the Department of Education ("DOE"), Office for Civil Rights ("OCR") issued an April 4, 2011 guidance document (the "April 2011 Dear Colleague Letter"), which has since been rescinded.

68.     The University admits that the April 4, 2011 Dear Colleague Letter contains the quoted language.

69.     The University lacks knowledge or information sufficient to form a belief as to the truth of the allegations in this paragraph.

70.     Denied.

71.     The University admits that on April 29, 2014, OCR published the guidance document "Questions and Answers on Title IX and Sexual Violence," which has now been rescinded, and that the guidance document contains the quoted language. Otherwise denied.

72.     Denied.

73.     The University admits that in April 2014, the White House Task Force to Protect Students from Sexual Assault issued a report titled "Not Alone" that contains the quoted language.

74.     The University lacks knowledge or information sufficient to form a belief as to the truth of the allegations in this paragraph.

75.     Denied.

76.     The University admits that OCR issued a Dear Colleague Letter on September 22, 2017 (the "September 22, 2017 Dear Colleague Letter"), which has since been rescinded. The University further admits that the September 22, 2017 Dear Colleague Letter rescinded the 2011 DCL and the 2014 "Questions and Answers on Title IX and Sexual Violence" document. Otherwise denied.

77.     Denied.

78.     The University lacks knowledge or information sufficient to form a belief as to the truth of the allegations in this paragraph.

79.     The University admits that in September 2017, OCR published a "Q&A on Campus Sexual Misconduct," which has since been rescinded, that contains the quoted language.

80.     Denied.

81.     The University admits that this paragraph accurately quotes Morrison's September 27, 2017 communication.

82.     The University admits that this paragraph accurately quotes Morrison's September 27, 2017 communication.

83.     Denied.

84.     Denied.

85.     The University admits that in January 2019, then-University President Brown wrote a letter to OCR providing comments on proposed changes to federal Title IX regulations. Otherwise denied.

86.     The University admits that the Daily Free Press article referenced in this paragraph contains the quoted language.

87.     The University admits that the Department of Education ("DOE") released final Title IX regulations on May 6, 2020, and that the regulations took effect on August 14, 2020 (the "2020 Title IX Regulations"). Further answering, the University states that DOE has since released new Title IX regulations, which become effective on August 1, 2024 (the "2024 Title IX Regulations").

88.     The University denies that this paragraph contains an accurate description of the 2020 Title IX Regulations.

89.     The University admits that the 2020 Title IX Regulations contain the definition of

"sexual harassment" quoted in footnote 6. The University further states that the definition of "sexual harassment" in the 2020 Title IX Regulations only applied to conduct that occurred on or after August 14, 2020, and that the 2024 Title IX Regulations will change the definition of "sexual harassment" effective August 1, 2024. The University further states that the 2020 Title IX regulations do not preclude universities from addressing sexual misconduct that does not meet 34 C.F.R. §106.30's definition of "sexual harassment" through university student or employee conduct codes.

90.     Denied.

91.      The University admits that DOE's preamble to the 2020 Title IX regulations states: "By utilizing precise definitions of conduct that constitutes sexual harassment, the Department aims to reduce uncertainty and confusion for recipients, students, and employees, while ensuring conduct that jeopardizes equal educational access remains conduct to which a recipient must respond under Title IX." Otherwise denied.

92.     Admitted.

93.     The University admits that it recognized its obligation to comply with applicable law. Otherwise denied.

94.     The University admits that it applied its Sexual Misconduct/Title IX Policy to Plaintiff's conduct that occurred prior to August 14, 2020. Otherwise denied.

95.     Denied.

96.     The University lacks knowledge or information sufficient to form a belief as to the truth of the allegations in this paragraph.

97.     The University admits that Plaintiff has received research grants from the National Eye Institute, NIH, the Juvenile Diabetes Research Foundation, and the American

9

Diabetes Association. The University lacks knowledge or information sufficient to form a belief as to the truth of the remaining allegations in this paragraph.

98.     The University lacks knowledge or information sufficient to form a belief as to the truth of the allegations in this paragraph.

99.     The University lacks knowledge or information sufficient to form a belief as to the truth of the allegations in this paragraph.

100.    The University lacks knowledge or information sufficient to form a belief as to the truth of the allegations in this paragraph.

101.    The University admits that Plaintiff received a Ph.D. from BU in 1990. The University lacks knowledge or information sufficient to form a belief as to the truth of the remaining allegations in this paragraph.

102.    The University lacks knowledge or information sufficient to form a belief as to the truth of the allegations in this paragraph.

103.    The University lacks knowledge or information sufficient to form a belief as to the truth of the allegations in this paragraph.

104.    The University admits that Plaintiff held faculty appointments in the Boston University Chobanian & Avedisian School of Medicine[3] continuously from December 14, 1999, to April 30, 2023. The University denies that it wrongfully terminated Plaintiff's faculty appointment.

105.    The University admits that Plaintiff was an Assistant Professor of Ophthalmology at BU from December 14, 1999, through September 2007.

---

[3] The Boston University School of Medicine was renamed the Boston University Aram V. Chobanian and Edward Avedisian School of Medicine in September 2022.

106.    The University admits that Plaintiff held appointments as an Associate Professor of Medicine at BU from November 16, 2004, to August 31, 2010 and as an Associate Professor of Ophthalmology at BU from September 20, 2007 to August 31, 2010. Otherwise denied.

107.    Denied.

108.    The University admits that Plaintiff held appointments as a Professor of Ophthalmology and a Professor of Medicine in the section of Endocrinology, Diabetes, and Nutrition at BU from September 1, 2010, through April 30, 2023.

109.    The University lacks knowledge or information sufficient to form a belief as to the truth of the allegations in this paragraph.

110.    The University lacks knowledge or information sufficient to form a belief as to the truth of the allegations in this paragraph.

111.    Denied.

112.    Denied.

113.    The University admits that Plaintiff was a full-time faculty member at BU. The University further admits that it has a Faculty Handbook, which has been revised over time, and that certain policies in the Faculty Handbook applied to Plaintiff's faculty appointment. Otherwise denied.

114.    The University admits that the "Appointment and Continuance of Appointments for Full-Time Faculty on the Medical Campus" section of the Faculty Handbook (as amended on April 16, 2012) contains the quoted language.

115.    The University lacks knowledge or information sufficient to form a belief as to the truth of the allegations in this paragraph.

116.    The University admits that under Section C of the "Appointment and Continuance of Appointments for Full-Time Faculty on the Medical Campus" section of the Faculty Handbook (as amended on April 16, 2012), absent a termination or suspension for cause, a full-time Professor on the Medical Campus who receives a notice of non-continuance is entitled to a three-year notice period, with full payment of salary in year 1 of the notice period and payment of 80% of salary in years 2 and 3 of the notice period. The University denies that Plaintiff was entitled to a three-year notice period because his employment was terminated for cause.

117.    Denied.

118.    The University admits that there is a "Suspension or Termination for Cause" policy in the Faculty Handbook that sets forth the procedures for termination or suspension of full-time faculty members covered by the Faculty Handbook. Further answering, the University states that Plaintiff's termination for cause proceedings were covered by the "Suspension or Termination for Cause" policy in effect at the time (the "Applicable Suspension or Termination for Cause Policy").[4]

119.    The University admits that the Applicable Suspension or Termination for Cause Policy stated: "When allegations of sexual misconduct or unlawful discrimination or harassment have been made against a faculty member, the allegations shall be investigated using the procedures set forth in the University's Procedures for the Resolution of Sexual Misconduct Complaints Against Faculty, Staff, Affiliates, and Non-Affiliates or the procedures set forth in Complaint Procedures in Cases of Alleged Unlawful Discrimination and Harassment, as appropriate. A finding of misconduct made pursuant to these procedures shall not be revisited by the Hearing Committee considering a faculty member's suspension or termination for cause, but

---

[4] The "Suspension or Termination for Cause" policy was subsequently amended effective April 16, 2024.

the committee shall, after providing the faculty member an opportunity to be heard pursuant to Section E, recommend an appropriate sanction, which may be suspension, termination, or other appropriate discipline." Otherwise denied.

120. Denied.

121. Denied.

122. The University admits that it has a Sexual Misconduct/Title IX Policy (referred to in the Complaint as the "Pre-August 14, 2020 Policy") that became effective January 1, 2015 and Procedures for the Resolution of Sexual Misconduct Complaints against Faculty, Staff, Affiliates, and Non-Affiliates (referred to in the Complaint as the "Pre-August 14, 2020 Procedures") that became effective June 1, 2015.  The University denies that the Pre-August 14, 2020 Policy and the Pre-August 14, 2020 Procedures no longer applied after August 13, 2020; they continue to apply to conduct that occurred before August 14, 2020.

123. Admitted.

124. The University admits that it implemented a new Sexual Misconduct Policy effective August 14, 2020 (referred to in the Complaint as the "Post-August 14, 2020 Policy"), which replaced the Pre-August 14, 2020 Policy for conduct that occurred on or after August 14, 2020. Otherwise denied.

125. The University admits that it implemented new Procedures for the Resolution of Title IX Sexual Misconduct Complaints Against Students, Faculty, Staff, Affiliates, and Non-Affiliates (the "Post-August 14, 2020 Title IX Procedures") effective August 14, 2020, which applied to alleged Title IX Sexual Misconduct that occurred on or after August 14, 2020. Otherwise denied.

126.    Denied, as the Post-August 14, 2020 Policy contains separate definitions of Title IX Sexual Harassment and Non-Title IX Sexual Harassment, both of which are prohibited.

127.    The University lacks knowledge or information sufficient to form a belief as to the truth of the allegations in this paragraph.

128.    The University lacks knowledge or information sufficient to form a belief as to the truth of the allegations in this paragraph.

129.    The University lacks knowledge or information sufficient to form a belief as to the truth of the allegations in this paragraph.

130.    The University lacks knowledge or information sufficient to form a belief as to the truth of the allegations in this paragraph.

131.    The University lacks knowledge or information sufficient to form a belief as to the truth of the allegations in this paragraph.

132.    Admitted that Jane Roe ("Roe") worked as a research assistant in Plaintiff's lab from approximately January 2020 through April 2, 2021, after volunteering in the lab. Otherwise denied.

133.    Denied, as a Hearing Board found by a preponderance of the evidence that Plaintiff had engaged in sexual harassment of Jane Roe ("Roe").

134.    The University lacks knowledge or information sufficient to form a belief as to the truth of the allegations in this paragraph.

135.    Admitted.

136.    The University lacks knowledge or information sufficient to form a belief as to the truth of the allegations in this paragraph.

137.    Admitted.

138.    Admitted.

139.    Admitted.

140.    Admitted.

141.    Admitted.

142.    Admitted.

143.    The University admits that Roe submitted a formal complaint to the University's Title IX Coordinator on January 24, 2022. Otherwise denied.

144.    Denied.

145.    The University admits that Dr. Coleman placed Plaintiff on administrative leave on January 27, 2022. Otherwise denied.

146.    Admitted.

147.    Denied.

148.    The University admits that Plaintiff sent Jessica Nagle the January 27, 2022 email referenced in this paragraph. The University lacks knowledge or information sufficient to form a belief as to the truth of the remaining allegations in this paragraph.

149.    Denied.

150.    Denied.

151.    Denied.

152.    The University admits that 34 C.F.R. §106.44(d) states, "Nothing in this subpart precludes a recipient from placing a non-student employee respondent on administrative leave during the pendency of a grievance process that complies with §106.45." Otherwise denied.

153.    Denied.

154.    Denied.

155.    Admitted.

156.    Admitted.

157.    The University admits that the February 2 NOIA contains the quoted language. Otherwise denied.

158.    Admitted.

159.    The University admits that the Post-August 14, 2020 Title IX Procedures (as defined in the University's answer to paragraph 125 above) contain the language quoted in this paragraph. The University denies that the definition of "complainant" quoted in this paragraph is complete.

160.    The University denies that this paragraph accurately summarizes the Post-August 14, 2020 Title IX Procedures.

161.    Denied.

162.    Denied.

163.    Denied.

164.    The University admits that the Post-August 14, 2020 Title IX Procedures and the 2020 Title IX Regulations require a formal complaint to initiate a grievance process for Title IX sexual harassment covered by the 2020 Title IX Regulations. Otherwise denied, as neither the Post-August 14, 2020 Title IX Procedures nor the 2020 Title IX Regulations prevent the University from investigating and addressing complaints of sexual harassment not covered by the 2020 Title IX Regulations.

165.    This paragraph contains legal conclusions to which no response is required. This paragraph does not state factual allegations, but rather purports to summarize federal regulations.

To the extent a response is deemed required, the University denies the allegations in this paragraph.

166. The University denies that this paragraph accurately describes the Post-August 14, 2020 Title IX Procedures.

167. Denied.

168. Admitted.

169. The University admits that it never identified the anonymous complainant, as the University does not know the anonymous complainant's identity. Otherwise denied.

170. Admitted.

171. Denied.

172. Denied.

173. Denied.

174. The University admits that the February 2 NOIA stated: "Due to the time period of the allegations, [Plaintiff] is alleged to have violated two policies, specifically the Sexual Misconduct/Title IX Policy and the Sexual Misconduct Policy. Allegations occurring before August 14, 2020, are covered under Sexual Misconduct/Title IX Policy, and allegations occurring on or after August 14, 2020, are covered under the Sexual Misconduct Policy." Otherwise denied.

175. Admitted.

176. The University admits that the definitions of Title IX Sexual Harassment and Non-Title IX Sexual Harassment in the Post-August 14, 2020 Policy are both consistent with the 2020 Title IX Regulations. Otherwise denied. Further answering, the University specifically

17

denies any suggestion that the definition of sexual harassment in the Pre-August 14, 2020 Policy violates the 2020 Title IX Regulations.

177.    Denied. The Post-August 14, 2020 Policy contains separate definitions of Title IX Sexual Harassment and Non-Title IX Sexual Harassment, neither of which are accurately described in this paragraph.

178.    The University admits that the preamble to the 2020 Title IX Regulations, published by the DOE in the Federal Register on May 19, 2020, contains the quoted language.

179.    The University admits that the preamble to the 2020 Title IX Regulations, published by the DOE in the Federal Register on May 19, 2020, contains the quoted language.

180.    Denied.

181.    The University admits that the February 2 NOIA stated that conduct alleged to have occurred on or after August 14, 2020 would be analyzed according to the "Procedures for the Resolution of Title IX Sexual Misconduct Complaints Against Students, Faculty, and Staff" and that conduct alleged to have occurred before August 14, 2020 would be analyzed according to the "Procedures for Resolution of Sexual Misconduct Complaints Against Faculty, Staff, Affiliated *[sic]*, and Non-Affiliates." Otherwise denied.

182.    Denied.

183.    Denied.

184.    Denied.

185.    Admitted.

186.    Denied.

187.    The University admits that Roe clarified the timing of the alleged harassment. Otherwise denied.

188.    Denied.

189.    Denied.

190.    Denied.

191.    The University admits that Plaintiff participated in the investigation of sexual harassment complaints against him. Otherwise denied.

192.    The University admits that Plaintiff participated in four interviews with the investigators and provided documents to the investigators. Otherwise denied.

193.    Denied.

194.    The University admits that Plaintiff sent the investigators an email on February 8, 2022, in which he requested to submit documents and to review copies of evidence obtained in the investigation to date. Otherwise denied.

195.    The University admits that Sanghavi emailed Plaintiff on February 9, 2022, and informed Plaintiff that he could send the investigators documentation before the interview. The University denies that Sanghavi denied Plaintiff's request to review and respond to evidence.

196.    The University admits that this paragraph accurately quotes the Post-August 14, 2020 Title IX Procedures. Otherwise denied.

197.    The University denies that this paragraph accurately describes Sections XII.B.3 and XII.B.4 of the Post-August 14, 2020 Title IX Procedures.

198.    The University admits that 34 C.F.R. §106.45(b)(5)(vi) provides that grievance processes falling within the scope of the 2020 Title IX regulations must "provide both parties an equal opportunity to inspect and review any evidence obtained as part of the investigation that is directly related to the allegations raised in a formal complaint." The University denies any

suggestion that the University did not provide Plaintiff an opportunity to inspect and review the evidence gathered as part of the investigation.

199. The University admits that Plaintiff sent the investigators documents on February 16, 2022. Otherwise denied.

200. Denied.

201. The University admits that it allowed Plaintiff an opportunity to review and inspect the evidence online before the conclusion of the investigatory process. Otherwise denied.

202. Admitted.

203. The University admits that it engaged Sokolow to be the Hearing Chair and that Sokolow was paid for his work. Otherwise denied.

204. The University admits that Sokolow arranged the logistics of witness appearances at the hearing. Otherwise denied.

205. Admitted.

206. The University admits that the Hearing Board asked witnesses if they were the anonymous complainant and that every witness denied being the anonymous complainant. Otherwise denied.

207. Denied.

208. Denied.

209. Denied.

210. Denied.

211. Denied.

212. Denied.

213. Denied.

214. Denied.

215. The University admits that the Hearing Board's Written Determination Report is dated May 26, 2022. Otherwise denied.

216. The University denies that this paragraph accurately quotes the Hearing Board's Written Determination Report.

217. The University admits that the Hearing Board's Written Determination Report refers to Roe as "Complainant 2." Otherwise denied.

218. Denied.

219. The University admits that the Hearing Board found Plaintiff responsible for engaging in sexual harassment in violation of the Sexual Misconduct/Title IX Policy applicable to conduct that occurred before August 14, 2020. The University further admits that the Hearing Board did not find Plaintiff responsible for engaging in Title IX Sexual Harassment, as defined in the Sexual Misconduct Policy applicable to conduct that occurred on or after August 14, 2020. Otherwise denied.

220. The University admits that the Hearing Board found Plaintiff responsible for engaging in sexual harassment in violation of the Sexual Misconduct/Title IX Policy applicable to conduct that occurred before August 14, 2020. The University further admits that the Hearing Board did not find Plaintiff responsible for engaging in Title IX Sexual Harassment, as defined in the Sexual Misconduct Policy applicable to conduct that occurred on or after August 14, 2020. Otherwise denied.

221. The University denies that the descriptions of the Pre-August 14, 2020 and Post-August 14, 2020 Policies in this paragraph are accurate.

222. Denied.

223.   Denied.

224.   Denied.

225.   Denied.

226.   The University admits that the Hearing Board found the four witnesses who testified at the hearing "exceptionally credible." Otherwise denied.

227.   Denied.

228.   Denied.

229.   The University admits that Sokolow arranged the logistics of witness appearances at the hearing. Otherwise denied.

230.   Denied.

231.   Denied.

232.   Denied.

233.   The University lacks knowledge or information sufficient to form a belief as to the truth of the allegations in this paragraph.

234.   Denied.

235.   Denied.

236.   The University admits that the Hearing Board's Written Determination Report contains the statement "Complainant demonstrated grit and resilience in bringing allegations against a much older, former supervisor" and refers to Roe as "a young female employee." Otherwise denied.

237.   Denied.

238.   Denied.

239.   Denied.

240.    Denied.

241.    Denied.

242.    Denied.

243.    Denied.

244.    Denied.

245.    Denied.

246.    The University admits that the Hearing Board found Plaintiff responsible for engaging in sexual harassment in violation of the Sexual Misconduct/Title IX Policy applicable to conduct that occurred before August 14, 2020. The University further admits that the Hearing Board did not find Plaintiff responsible for engaging in Title IX Sexual Harassment, as defined in the Sexual Misconduct Policy applicable to conduct that occurred on or after August 14, 2020. Otherwise denied.

247.    The University admits that on May 31, 2022, the University notified Plaintiff that it was dismissing the anonymous complaint made on October 7, 2021. Otherwise denied.

248.    Denied.

249.    Admitted.

250.    Denied.

251.    The University admits that Antman spoke with Coleman and Sokolow. Otherwise denied.

252.    Denied.

253.    The University lacks knowledge or information sufficient to form a belief as to the truth of the allegations in this paragraph.

254.    The University admits the allegations in the first sentence of this paragraph. The University further states that the Hearing Board's Written Determination Report outlined the grounds for appeal under the University's "Procedures for the Resolution of Title IX Sexual Misconduct Complaints Against Faculty, Staff, Affiliates, and Non-Affiliates." Otherwise denied.

255.    The University denies that this paragraph accurately or completely describes the grounds for appeal stated in the Pre-August 14, 2020 Procedures.

256.    The University denies that this paragraph accurately or completely describes the grounds for appeal stated in the Post-August 14, 2020 Title IX Procedures.

257.    The University admits that Plaintiff submitted an appeal of the Written Determination Report and University Sanction Report on June 13, 2022. The University lacks knowledge or information sufficient to form a belief as to the truth of the remaining allegations in this paragraph.

258.    Denied.

259.    The University admits that Plaintiff made the arguments set forth in this paragraph in his June 13, 2022 appeal. Otherwise denied.

260.    The University admits that Plaintiff argued that the sanction was disproportionate in his June 13, 2022 appeal. Otherwise denied.

261.    The University admits that Plaintiff argued that the sanction was disproportionate in his June 13, 2022 appeal. Otherwise denied.

262.    The University admits that Plaintiff argued in his June 13, 2022 appeal that there was insufficient evidence to support the Hearing Board's finding and that the Hearing Board failed to consider critical evidence. Otherwise denied.

263.    The University admits that Plaintiff argued in his June 13, 2022 appeal that there were numerous procedural irregularities in the proceedings. Otherwise denied.

264.    The University admits that Plaintiff argued in his June 13, 2022 appeal that BU's application of separate definitions of sexual harassment based on the date of the alleged conduct was a procedural irregularity. Otherwise denied.

265.    The University denies that this paragraph accurately describes Plaintiff's arguments in his June 13, 2022 appeal.

266.    The University admits that Plaintiff argued in his June 13, 2022 appeal that it was unclear what procedures were being followed by the Hearing Board. Otherwise denied.

267.    The University admits that Plaintiff made the argument described in this paragraph in his June 13, 2022 appeal. Otherwise denied.

268.    The University admits that Plaintiff made the arguments described in this paragraph in his June 13, 2022 appeal. Otherwise denied.

269.    The University admits that on June 27, 2022, Dr. Daniel Kleinman (Associate Provost for Graduate Affairs) issued a written decision denying Plaintiff's appeal. Otherwise denied.

270.    The University admits that Kleinman did not consider Plaintiff's arguments that were based on appeal grounds not stated in the Post-August 14, 2020 Title IX Procedures. The University further admits that the Hearing Board analyzed Plaintiff's pre-August 14, 2020 conduct under the definition of sexual harassment in the Pre-August 14, 2020 Policy. Otherwise denied.

271.    The University admits that the February 2 NOIA stated that allegations of conduct alleged to have occurred before August 14, 2020 would be analyzed according to the procedures

detailed in the Pre-August 14, 2020 Policy and the Pre-August 14, 2020 Procedures. Otherwise denied.

272.    Denied.

273.    Admitted.

274.    Admitted.

275.    The University admits that the attachment to Morrison's July 19, 2022 letter stated that she recommended termination of his faculty appointment. The University further admits that the attachment to Morrison's July 19, 2022 letter stated "The Hearing Board determined that [Plaintiff's] pre-August 2020 conduct met the definition of sexual harassment in place at that time, thereby violating BU's Sexual Misconduct/Title IX Policy." Otherwise denied.

276.    Denied.

277.    Denied.

278.    Admitted.

279.    The University admits that on July 19, 2022, it issued Plaintiff a notice of non-continuance citing Section C of the policy entitled Appointment and Continuance of Appointment for Full-Time Faculty on the Medical Campus in the Faculty Handbook. Otherwise denied.

280.    Admitted.

281.    The University admits that the July 19, 2022 notice of non-continuance contains the language quoted in this paragraph. Otherwise denied.

282.    Denied, as the terms of the notice of non-continuance applied only if Plaintiff's faculty appointment was not terminated for cause.

283.    Admitted.

284.    Denied.

285.    Admitted.

286.    Denied.

287.    The University admits that on October 26, 2022, Plaintiff sent a letter to Morrison, in which he stated, "I write in furtherance of my respectful request of July 25, 2022 to move forward with the faculty hearing process and to provide additional information for consideration." Otherwise denied.

288.    Admitted.

289.    Admitted.

290.    The University admits that Antman appeared as a witness for the Office of the Provost at the January 12, 2023 hearing. Otherwise denied.

291.    Admitted.

292.    Denied.

293.    Denied.

294.    Denied.

295.    Denied.

296.    Denied.

297.    Denied.

298.    Denied.

299.    Denied.

300.    Admitted.

301.    The University denies that this paragraph accurately describes Antman's statements at the January 12, 2023 hearing.

302. Admitted.

303. Denied.

304. The University admits that Antman never spoke with Roe. Otherwise denied.

305. Denied.

306. The University admits that at the January 12, 2023 hearing, Antman referenced a 2012 situation involving a post-doc and expressed her view that the post-doc was vulnerable and Plaintiff had taken advantage of him. Otherwise denied.

307. Denied.

308. Denied.

309. Denied.

310. Denied.

311. The University admits that Antman spoke with Sokolow and Coleman before making her sanction decision. Otherwise denied.

312. Admitted.

313. Denied.

314. Denied. Further answering, the University states that this paragraph takes Antman's statements out of context and mischaracterizes them.

315. Denied, as this paragraph mischaracterizes Antman's statements at the hearing.

316. The University admits that at the January 12, 2023 hearing, Antman stated that she spoke with Sokolow, and that Sokolow "was pretty adamant about this being a real problem," "didn't think this behavior would end," and expressed his opinion "that this was highly impactful on the people in – the lab[.]" Otherwise denied.

317. Denied.

318.    Denied.

319.    Denied.

320.    The University admits that at the January 12, 2023 hearing, Antman stated that she consulted with Coleman before issuing her sanction decision. Otherwise denied.

321.    Denied.

322.    Admitted.

323.    Denied.

324.    The University admits that Coleman appeared as a witness for the Office of the Provost at the January 12, 2023 hearing.

325.    Denied.

326.    Denied.

327.    The University denies that this paragraph accurately summarizes Coleman's statements at the January 12, 2023 hearing.

328.    The University denies that this paragraph accurately summarizes Coleman's statements at the January 12, 2023 hearing.

329.    Denied.

330.    Denied.

331.    Denied.

332.    The University admits that at the January 12, 2023 hearing, Antman referenced another BU faculty member who had been terminated for cause as the result of sexual misconduct, David Marchant. Otherwise denied.

333.    The University admits that it terminated the employment of Marchant, a white male professor, in 2019 for sexual misconduct. The University lacks knowledge or information

29

sufficient to form a belief as to the truth of the allegation that Marchant is of European ancestry. Otherwise denied.

334.    Admitted.

335.    Denied.

336.    Denied.

337.    Denied.

338.    Denied.

339.    Admitted.

340.    The University denies that this paragraph accurately summarizes Plaintiff's January 23, 2023 post-hearing brief.

341.    Admitted.

342.    Denied.

343.    Denied.

344.    The University admits that the Faculty Hearing Committee Report contains the language quoted in this paragraph. Otherwise denied.

345.    Denied.

346.    Denied.

347.    Admitted.

348.    Admitted.

349.    The University admits that Brown sent a letter to Doe dated February 21, 2023, in which he notified Plaintiff that he would recommend the sanction of termination of cause to the Executive Committee of the Board of Trustees for its consideration and final decision under Section H of the Faculty Handbook. Otherwise denied.

350.    Admitted.

351.    Admitted.

352.    The University admits that Pursuant to Section H of the Applicable Suspension or Termination for Cause Policy, the decision of the Board of Trustees is final.

353.    Denied.

354.    Denied.

355.    The University admits that the Hearing Board found Plaintiff responsible for engaging in sexual harassment in violation of the Sexual Misconduct/Title IX Policy applicable to conduct that occurred before August 14, 2020. The University further admits that the Hearing Board did not find Plaintiff responsible for engaging in Title IX Sexual Harassment, as defined in the Sexual Misconduct Policy applicable to conduct that occurred on or after August 14, 2020. Otherwise denied.

356.    Denied.

357.    Denied.

358.    Denied.

359.    Denied.

360.    The University is unable to comprehend this allegation. The University denies that it terminated Plaintiff or other employees without following its policies or procedures.

361.    The University is unable to comprehend this allegation. The University denies that it terminated Plaintiff or other employees without following its policies or procedures.

362.    Denied.

363.    The University admits that at the time of his termination, Plaintiff was 63 years old. Otherwise denied.

364.    Denied.

365.    The University admits that the Hearing Board's Written Determination Report stated that "Complainant demonstrated grit and resilience in bringing allegations against a much older, former supervisor who is a faculty member with considerable relative power." Otherwise denied.

366.    Denied.

367.    The University denies that this paragraph contains an accurate statement of the applicable law.

368.    Denied.

369.    The University denies that it assumed that Plaintiff had engaged in sexual misconduct because he was an older male.

370.    The University admits that Plaintiff is male. The University lacks knowledge or information sufficient to be able to form a belief as to the truth of the allegation that Plaintiff is South Asian-American or the characterization that Plaintiff is "medium-complexioned." Otherwise denied.

371.    The University is unable to comprehend this allegation and thus denies it.

372.    Denied. Further answering, the University states that it considers personnel matters involving other employees confidential.

373.    Denied. Further answering, the University states that it considers personnel matters involving other employees confidential.

374.    Denied.

375.    The University admits that it did not take disciplinary action based on the anonymous allegations set forth in the referenced Daily Free Press article. Otherwise denied.

32

Further answering, the University states that it considers personnel matters involving other employees confidential.

376. The University lacks knowledge or information sufficient to form a belief as to the truth of the allegation that Plaintiff speaks slightly accented English reflecting a first language of Bengali. Otherwise denied.

377. Denied.

378. Denied.

379. The University admits that Nagle, Cronin, Saudino, Coleman, Antman, Kleinman, Morrison, Chernock, Devoe, Fleming, Simcoe, and Brown are white, and that Pak is of Asian descent. The University lacks knowledge or information sufficient to form a belief as to the truth of the allegations that Sanghavi, Kennedy, and Sokolow are White or that any of the individuals listed in this paragraph are of European ancestry. Otherwise denied.

380. Denied.

381. This paragraph consists of a legal conclusion to which no response is required. This paragraph does not allege facts, but rather purports to summarize the law. To the extent a response is deemed required, the University denies the allegations in this paragraph.

382. Denied.

383. Denied.

384. Denied.

385. Denied.

386. Denied.

387. The University lacks knowledge or information sufficient to form a belief as to the truth of the allegations in this paragraph.

388.    Denied.

**Count I**
**Violation of Title IX of the Education Amendments of 1972, 20 U.S.C. 1681 *et seq.***

389.    The University incorporates it responses to the paragraphs above.

390.    The University admits that Title IX contains the quoted language.

391.    The University admits that Title IX applies to the University by virtue of its receipt of federal funding. The University lacks knowledge or information sufficient to form a belief as to the truth of the remaining allegations of this paragraph.

392.    This paragraph contains legal conclusions to which no response is required. This paragraph does not state factual allegations, but rather purports to summarize case law. To the extent a response is deemed required, the University denies the allegations in this paragraph.

393.    The University admits that 34 C.F.R. §106.8(c) requires schools to adopt grievance procedures for the prompt and equitable resolution of complaints involving conduct prohibited by the regulations. Otherwise denied.

394.    The University admits that 34 C.F.R. §106.45 sets forth requirements for a grievance process used to resolve allegations of misconduct that fall within the scope of the 2020 Title IX Regulations. Otherwise denied.

395.    This paragraph contains legal conclusions to which no response is required. This paragraph does not state factual allegations, but rather purports to summarize case law. To the extent a response is deemed required, the University denies the allegations in this paragraph.

396.    This paragraph contains legal conclusions to which no response is required. This paragraph does not state factual allegations, but rather purports to summarize case law. To the extent a response is deemed required, the University denies the allegations in this paragraph.

397.    Denied.

398.    Denied.

399.    Denied.

400.    Denied.

### Count II
### Violation of Massachusetts Gen. L. ch. 151B
### Discrimination Based on Sex and Gender

401.    The University incorporates it responses to the paragraphs above.

402.    The University admits that M.G.L. c. 151B, §4(4) prohibits employment discrimination based on gender.

403.    Denied.

404.    This paragraph consists of a legal conclusion to which no response is required. This paragraph does not allege facts, but rather purports to summarize case law. To the extent a response is deemed required, the University denies the allegations in this paragraph.

405.    Admitted.

406.    The University denies that Plaintiff performed the duties required by his position in a satisfactory manner throughout his employment. The University lacks knowledge or information sufficient to form a belief as to the truth of the remaining allegations in this paragraph.

407.    This paragraph consists of a legal conclusion to which no response is required. To the extent a response is deemed required, the University denies the allegations in this paragraph.

408.    Denied.

409.  The University admits that it currently employs professors. Otherwise denied.

410.    Denied.

411.    Denied.

412.    Denied.

## Count III
## Violation of Massachusetts Gen. L. ch. 151B
## Discrimination Based on Race, Color, or National Origin

413.    The University incorporates it responses to the paragraphs above.

414.    The University admits that M.G.L. c. 151B, §4(4) prohibits employment

discrimination based on race, color, or national origin.

415.    Denied.

416.    Denied.

417.    Denied.

418.    Denied.

419.    Denied.

## Count IV
## Discrimination Based on Age – Violation of Mass. Gen. L. ch. 151B

420.    The University incorporates it responses to the paragraphs above.

421.    The University admits that M.G.L. c. 151B, §4(4) prohibits employment

discrimination based on age.

422.    Denied.

423.    Denied.

424.    Denied.

425.    Denied.

426.    Denied.

## Count V
## Title VII of the Civil Rights Act of 1964
## Discrimination Based on Sex or Gender

427.    The University incorporates it responses to the paragraphs above.

36

428. Admitted.

429. Denied.

430. This paragraph consists of a legal conclusion to which no response is required. This paragraph does not allege facts, but rather purports to summarize case law. To the extent a response is deemed required, the University denies the allegations in this paragraph.

431. Admitted.

432. The University denies that Plaintiff performed the duties required by his position in a satisfactory manner throughout his employment. The University lacks knowledge or information sufficient to form a belief as to the truth of the remaining allegations in this paragraph.

433. This paragraph consists of a legal conclusion to which no response is required. To the extent a response is required, the University denies this allegation.

434. The University admits that it currently employs professors. Otherwise denied.

435. Denied.

436. Denied.

437. Denied.

### Count VI
### Title VII of the Civil Rights Act of 1964
### Discrimination Based on Race, Color, or National Origin

438. The University incorporates it responses to the paragraphs above.

439. Admitted.

440. Denied.

441. The University admits that it currently employs professors. Otherwise denied.

442. Denied.

443. Denied.

444. Denied.

## Count VII
## Age Discrimination in Employment Act ("ADEA")

445. The University incorporates it responses to the paragraphs above.

446. Admitted.

447. This paragraph consists of a legal conclusion to which no response is required. This paragraph does not allege facts, but rather purports to summarize case law. To the extent a response is deemed required, the University denies the allegations in this paragraph.

448. Admitted.

449. Denied.

450. Admitted.

451. The University admits that it currently employs professors. Otherwise denied.

452. Denied.

453. Denied.

454. Denied.

## Count VIII
## Breach of Contract

455. The University incorporates it responses to the paragraphs above.

456. Denied.

457. Denied.

458. Denied.

459. Denied.

460. Denied.

## Count IX
## Denial of Basic Fairness

461. The University incorporates it responses to the paragraphs above.

462. This paragraph consists of a legal conclusion to which no response is required. This paragraph does not allege facts, but rather purports to summarize case law. To the extent a response is deemed required, the University denies the allegations in this paragraph.

463. This paragraph consists of a legal conclusion to which no response is required. This paragraph does not allege facts, but rather purports to summarize case law. To the extent a response is deemed required, the University denies the allegations in this paragraph.

464. Denied, as this allegation does not identify any specific University policies or procedures.

465. Denied, as this allegation does not identify any specific University policies or procedures.

466. Denied.

467. Denied.

468. Denied.

## Count X
## Estoppel

469. The University incorporates it responses to the paragraphs above.

470. Denied.

471. This paragraph consists of a legal conclusion to which no response is required. This paragraph does not allege facts, but rather purports to summarize case law. To the extent a response is deemed required, the University denies the allegations in this paragraph.

472. Denied.

473.    Denied.

474.    Denied.

475.    Denied.

### Count XI
### Breach of the Implied Covenant of Good Faith and Fair Dealing

476.    The University incorporates it responses to the paragraphs above.

477.    This paragraph consists of a legal conclusion to which no response is required. This paragraph does not allege facts, but rather purports to summarize case law. To the extent a response is deemed required, the University denies the allegations in this paragraph.

478.    Denied.

479.    Denied.

480.    Denied.

481.    Denied.

482.    Denied.

483.    Denied.

484.    Denied.

485.    Denied.

486.    Denied.

487.    Denied.

The University denies that Plaintiff is entitled to any of the relief sought in the Prayer for Relief.

### AFFIRMATIVE DEFENSES

The University asserts the following affirmative defenses. Assertion of the following affirmative defenses is not intended to and does not alter the burden of proof with respect to any defense or affirmative defense, whether asserted below or not. The University reserves the right

to assert additional affirmative defenses.

1. Plaintiff's claims are barred as a matter of law to the extent he cannot prove any one or more of the elements of those claims.

2. Plaintiff has no private right of action for claims of employment discrimination under Title IX.

3. Plaintiff has no private right of action for alleged violations of Title IX's administrative requirements or regulations.

4. Any purported claims against the University's "governing body" must be dismissed because the University's Board of Trustees is not a separate entity that can be sued.

5. The University's actions that are the subject of this lawsuit were taken for legitimate, non-discriminatory reasons.

6. Plaintiff's claims are barred by the doctrines of waiver, estoppel, laches, and unclean hands.

7. Plaintiff's claims are barred in whole or part by the statute of limitations.

8. Plaintiff's claims are barred to the extent he failed to exhaust his administrative remedies.

9. Any potential recovery is limited by the July 19, 2022 notice of non-continuance provided to Plaintiff, as his employment would have ended effective July 19, 2025, absent his termination for cause.

10. Plaintiff's claims are barred in whole or part to the extent his post-August 14, 2020 conduct constituted prohibited Non-Title IX Sexual Misconduct under the Post-August 14, 2020 Policy.

11. Plaintiff's claims fail because even if the University had dismissed (or not accepted)

Jane Roe's formal complaint under the Post-August 14, 2020 Title IX Procedures, it would have investigated Roe's allegations pursuant to the Procedures for the Resolution of Non-Title IX Sexual Misconduct Complaints Against Faculty, Staff, Affiliates, and Non-Affiliates and/or the Pre-August 14, 2020 Procedures.

12. Plaintiff's claims rely on outdated Title IX regulations, as new Title IX regulations become effective August 1, 2024.

13. Plaintiff's recovery, if any, is limited to $20,000 to the extent his claims are subject to M.G.L. c. 231, §85K.

14. Plaintiff's claim for injunctive or other equitable relief is barred to the extent he has an adequate remedy at law.

15. Plaintiff's damages, if any, must be reduced to the extent he failed to mitigate them.

16. Any recovery must be reduced (or offset) by income Plaintiff has received from any source since April 30, 2023.

17. Plaintiff cannot recover damages or other relief beyond those provided for in applicable statutes or common law.

18. At all times relevant to this case, the University acted reasonably, in good faith, and in accordance with its legal duties, rights, and obligations.

19. The claims arising out of the subject matter of the transactions and occurrences alleged were the result of Plaintiff's own acts or omissions, for whose conduct the University is not legally responsible.

20. To the extent the University had any duty or obligation to Plaintiff, the University has performed, satisfied, and is therefore released from such duty and obligation.

The University hereby gives notice that it intends to rely upon such other and further defenses as may become available or apparent during discovery proceedings in this action and hereby reserves the right to amend its Answer and to assert any such defense by appropriate motion.

## JURY DEMAND

The University demands a trial by jury on all claims so triable.

Respectfully submitted,

TRUSTEES OF BOSTON UNIVERSITY,
By its attorney,

/s/ Jennifer Belli
Jennifer Belli (BBO #660278)
jbelli@bu.edu
Boston University
Office of the General Counsel 125
Bay State Road Boston,
MA 02215
(617) 353-2326

Dated: July 2, 2024

43

## **CERTIFICATE OF SERVICE**

I, Jennifer Belli, hereby certify that this document, filed through the CM/ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF) and paper copies will be sent to those indicated as nonregistered participants on July 2, 2024.


/s/ Jennifer Belli